**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JOHN DOE,

     *Plaintiff*,

  v.

KROLL RESTRUCTURING
ADMINISTRATION LLC,

     *Defendant*.

Case No. 1:26-cv-2363-JPC

**REPLY IN SUPPORT OF**
**PLAINTIFF'S MOTION TO PROCEED UNDER PSEUDONYM**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...........................................................................................................1

ARGUMENT ................................................................................................................2

I.     Plaintiff has consistently maintained his confidentiality, and compelling
disclosure would subject him to a serious risk of further harm...........................2

     A.     Plaintiff did not "forfeit" his anonymity by participating in the Genesis
bankruptcy or appearing by pseudonym in criminal filings (*Factor 7*). .................2

     B.     Identifying Plaintiff would expose him to a serious risk of harm (*Factor 2*). ...............................................................................................................5

     C.     Identifying Plaintiff would also exacerbate the very injury for which he
seeks redress through this lawsuit (*Factor 3*). ...........................................6

II.     Allowing Plaintiff to proceed under pseudonym will not prejudice Kroll (*Factor 6*)..........................................................................................................8

III.     The public does not have an atypical interest in knowing Plaintiff's identity
(*Factors 8 & 9*). .............................................................................................10

IV.     There are no alternative mechanisms to protect Plaintiff's confidentiality (*Factor 10*). ....................................................................................................11

CONCLUSION..........................................................................................................11

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Be v. Comcast Corp.*,
  2021 WL 694556 (S.D.N.Y. Feb. 23, 2021)........................................................................7, 11

*Doe v. Black Diamond Cap. Mgmt. LLC*,
  2023 WL 2648017 (S.D.N.Y. Mar. 27, 2023)............................................................................4

*Doe v. Cigna Health & Life Ins. Co.*,
  2026 WL 21823 (S.D.N.Y. Jan. 2, 2026)............................................................................7, 11

*Doe v. Combs*,
  2025 WL 1079038 (S.D.N.Y. Apr. 9, 2025) .......................................................................9, 10

*Doe v. DNA Diagnostics Ctr. LLC*,
  2025 WL 1725449 (S.D.N.Y. June 18, 2025) ........................................................ 3, 9, 10, 11

*Doe v. Doe*,
  2020 WL 6900002 (E.D.N.Y. Nov. 24, 2020) .........................................................................4

*Doe v. Fashion Inst. of Tech.*,
  2025 WL 384562 (S.D.N.Y. Feb. 4, 2025)...............................................................................5

*Doe v. Gong Xi Fa Cai*,
  2019 WL 3034793 (S.D.N.Y. July 10, 2019) ..........................................................................7

*Doe v. Gooding*,
  2021 WL 5991819 (S.D.N.Y. July 29, 2021)..........................................................................11

*Doe v. Gooding*,
  2022 WL 1104750 (S.D.N.Y. Apr. 13, 2022) ........................................................................10

*Doe v. Salina*,
  2024 WL 1259362 (E.D.N.Y. Mar. 25, 2024)..........................................................................3

*Doe v. Smith*,
  105 F. Supp. 2d 40 (E.D.N.Y. 1999).....................................................................................5, 6

*Doe v. Telemundo Network Grp. LLC*,
  2023 WL 6259390 (S.D.N.Y. Sept. 26, 2023) ........................................................... 1, 2, 5, 10

*Doe v. Townes*,
  2020 WL 2395159 (S.D.N.Y. May 12, 2020) ......................................................................9, 10

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Does v. Kroll,*
  No. 1:25-cv-01319-RP (W.D. Tex.), Dkt. 20 ............................................................. 1

*E.B. v. Landry,*
  2020 WL 5775148 (M.D. La. Sept. 28, 2020) .......................................................... 6

*EW v. N.Y. Blood Ctr.,*
  213 F.R.D. 108 (E.D.N.Y. 2003) ............................................................................. 9

*In re FTX Trading Ltd.,*
  No. 22-11068 (Bankr. D. Del.) ................................................................................ 9

*Guerrilla Girls, Inc. v. Kaz,*
  224 F.R.D. 571 (S.D.N.Y. 2004) ............................................................................ 6

*Roe v. Ingraham,*
  364 F. Supp. 536 (S.D.N.Y. 1973) ......................................................................... 6

*Sealed Plaintiff v. Sealed Defendant,*
  537 F.3d 185 (2d Cir. 2008) ........................................................................... *passim*

*Trooper 1 v. N.Y. State Police,*
  2022 WL 22869548 (E.D.N.Y. June 9, 2022) ......................................................... 4

**INTRODUCTION**[1]

As detailed in Plaintiff's opening brief (Dkt. 11, "Pl. Br."), the factors enumerated in *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185 (2d Cir. 2008), favor allowing him to proceed pseudonymously. Kroll primarily argues that (1) Plaintiff's identity "has not been kept confidential" because ███████████████████████████████████████████ ███████████████████████ and his initials were used in 2024 criminal proceedings involving perpetrators of cryptocurrency-related theft, Dkt. 18 ("Opp.") 1; (2) Kroll would be prejudiced because Plaintiff's allegations "damage [Kroll]'s and its affiliates' business reputations" (*id.* at 2); and (3) pseudonymity "would undermine the public's legitimate interest in the fair adjudication of this dispute" (*id.*). None of these arguments has merit.

*First*, the relevant question under the *Sealed Plaintiff* analysis does not ask whether the public could, through diligent research, identify Plaintiff, but rather "inquires as to the status of a plaintiff's confidentiality *thus far in the litigation.*" *Doe v. Telemundo Network Grp. LLC*, 2023 WL 6259390, at *6 (S.D.N.Y. Sept. 26, 2023) (Cronan, J.). It has. Indeed, courts have permitted pseudonymity even where—unlike here—parties initially included their names on the public docket or used their true names in related government investigations.

*Second*, Kroll's asserted prejudice is unpersuasive. Kroll *did not oppose* a materially identical motion six months ago in *Does v. Kroll*, No. 1:25-cv-01319-RP (W.D. Tex.), Dkt. 20 at 2—a class action asserting claims arising from the same data breach. Kroll attempts to distinguish that case by contending Plaintiff's identity "is critical to the public's understanding of the case." Opp. 15. But Kroll never explains how Plaintiff's *name* is critical, instead reverting to the assertion

---

[1] All emphases are added and all internal citations and quotation marks are omitted, unless otherwise indicated.

that Plaintiff "revealed [his] status" as a cryptocurrency investor by ████████████████ *Id.* Plaintiff's participation in the bankruptcy proceedings does not speak to prejudice, and shielding Plaintiff's name from the public at large—but not from Kroll—will not impede Kroll's ability to advance any legal or factual argument in this case.

*Third*, Kroll does not explain how protecting Plaintiff's identity would frustrate "the public's interest in enforcing legal and social norms." Opp. 11-12. It would not: allowing Plaintiff to proceed pseudonymously will not impair the public's ability to evaluate the allegations, the facts and legal issues, and the bases for the Court's rulings and the factfinder's verdict.

*Finally*, no alternative means would sufficiently protect Plaintiff from the serious risk of harm he would face from disclosure. While Kroll vaguely suggests Plaintiff can "seek targeted redactions at the appropriate time" or enter into a confidentiality agreement (*id.* at 16), neither addresses the core issue: that the very act of disclosing Plaintiff's name would allow threat actors to target Plaintiff as a high-net-worth cryptocurrency investor whose data has been compromised (due to Kroll's improper conduct) and who has been preyed on by criminals.

For these reasons as well as those detailed in Plaintiff's opening brief and further below, the Court should grant Plaintiff's motion.

**ARGUMENT**

I. **Plaintiff has consistently maintained his confidentiality, and compelling disclosure would subject him to a serious risk of further harm.**

A. **Plaintiff did not "forfeit" his anonymity by participating in the Genesis bankruptcy or appearing by pseudonym in criminal filings (*Factor 7*).**

Factor 7 asks whether Plaintiff's confidentiality has been maintained thus far in the litigation (*Telemundo*, 2023 WL 6259390, at *6)—and it has. Plaintiff has protected his identity as the victim of Kroll's unlawful failure to safeguard his sensitive data. Kroll—which, unlike the public, is privy to the identities of Genesis creditors—argues that because Plaintiff ████████████

- 2 -

████████████████████████ and is referenced by his initials in certain criminal filings, his "identity is no longer confidential." Opp. 3. That is incorrect. The public has not connected Plaintiff—one of hundreds of Genesis creditors—to the social engineering attack detailed in his Complaint, precisely because Plaintiff *has* maintained his confidentiality. None of the documents Kroll attached suggests otherwise. ██████████████████████████████████ ██████████████████████████████████████ does not constitute a decision to identify himself as a *data-breach and crime victim* in 2026. Even if someone could use information currently in the public domain to connect the dots and make an educated guess about Plaintiff's identity, compelling disclosure in this lawsuit would link all of those dots in a single public filing. *That* is the risk Plaintiff seeks to avoid.

*DNA Diagnostics Center* is instructive. There, the plaintiff inadvertently revealed her identity in initial state court filings, and news agencies interviewed her about the specific facts of her lawsuit on the condition she "remain anonymous." *Doe v. DNA Diagnostics Ctr. LLC*, 2025 WL 1725449, at *1-2 (S.D.N.Y. June 18, 2025). The court held plaintiff had "taken adequate steps to preserve her confidentiality" and explained "an outsider's ability to ascertain information about a plaintiff does not by itself negate that she has preserved her confidentiality." *Id.* at *7. The court acknowledged that a party "may be publicly available through other means of inquiry, or even that an astute individual would be able to aggregate public information in this litigation to deduce a reasonable or potentially accurate guess," but nevertheless held this factor supported plaintiff. *Id.* Other courts are in accord. *See, e.g.*, *Doe v. Salina*, 2024 WL 1259362, at *6 (E.D.N.Y. Mar. 25, 2024) (Factor 7 favored pseudonymity despite "some of the underlying events occur[ing] in a public school and on social media" and notice of claim identifying plaintiffs being subject to FOIA request).

Plaintiff's ███████████████████ does not strip him of the right to proceed pseudonymously here. Even where parties have publicly disclosed their identities *in connection with the very allegations at issue in the lawsuit*, courts have permitted pseudonymity. For example, in *Doe v. Doe*, the court determined the defendant's identity had "been kept confidential" notwithstanding that "the defendant's name appeared on the docket for approximately two weeks after the plaintiff filed her complaint," because "his name has not otherwise been associated with these allegations in the public media." 2020 WL 6900002, at *3 (E.D.N.Y. Nov. 24, 2020). This was also true in *Doe v. Black Diamond Capital Management LLC*, where the plaintiff initially filed a claim using his true name before the Equal Employment Opportunity Commission and then proceeded under pseudonym in a subsequent civil action concerning the same alleged discrimination. 2023 WL 2648017, at *1, *5 (S.D.N.Y. Mar. 27, 2023). The court held Factor 7 weighed in plaintiff's favor because "the EEOC's files are significantly less public than those of this Court, and there is no evidence that plaintiff has contacted the press or otherwise revealed his identity in any fully public forum." *Id.* at *5. The same is true of the Genesis bankruptcy proceedings—where the court granted a motion to seal claimants' identities—and the criminal proceedings related to the social engineering attack, both of which Kroll relies on to claim Plaintiff "forfeited" his confidentiality (Opp. 1).

Additionally, Plaintiff has taken specific steps to protect his identity in the criminal proceedings, which do not contain his name and instead refer to him as "Victim" or by his initials. *See* Dkt. 27 (Flath Decl.), Exs. D-G.[2] This weighs in Plaintiff's favor. *See Trooper 1 v. N.Y. State*

---

[2] ████████████████████████████████████████████ This is precisely the "astute" aggregation of public information (enhanced by Kroll's non-public information) that does not obviate a plaintiff's confidentiality.

*Police*, 2022 WL 22869548, at *4 (E.D.N.Y. June 9, 2022) (fact that state attorney general and prosecutors refused to identify plaintiff during their investigations favored plaintiff).

This Court's decision in *Telemundo* is inapposite. Although the Court noted Factor 7 may weigh "strongly—almost dispositively—in favor of disclosure" when a plaintiff's identity is no longer confidential, 2023 WL 6259390, at *6, its conclusion stemmed from plaintiff's actions *relating to the lawsuit*. In stark contrast to the present circumstances, Plaintiff there "ha[d] revealed her identity and the allegations that give rise to th[e] lawsuit" by giving a press interview "identifie[d] by name with a photograph of her on the cover." *Id.* No such self-identification has occurred here.

### B.    Identifying Plaintiff would expose him to a serious risk of harm (*Factor 2*).

"Courts have allowed plaintiffs to proceed anonymously where disclosure of their identities created a risk of harm from third parties unaffiliated with the case." *Doe v. Smith*, 105 F. Supp. 2d 40, 45 (E.D.N.Y. 1999). As a high-net-worth cryptocurrency investor, Plaintiff faces the documented risk of physical (and financial) harm from third parties. As detailed in Plaintiff's opening brief, individuals known to hold significant cryptocurrency have repeatedly been physically attacked because cryptocurrency is a "bearer asset"—meaning that anyone who obtains an investor's private cryptocurrency keys gains immediate, irrevocable control over it. Pl. Br. 3-5 (collecting news articles of crypto-related violence and citing Department of Treasury report). This satisfies Factor 2. *See Doe v. Fashion Inst. of Tech.*, 2025 WL 384562, at *2 (S.D.N.Y. Feb. 4, 2025) (Cronan, J.) (Factor 2 favored pseudonymity where plaintiff had been subjected to threats and disclosure "could subject her to similar threats or harms").

Kroll's argument that wealth alone is not the sort of "sensitive" information warranting pseudonymity misses the point. The relevant risk (in addition to potential further financial injury) is physical harm to Plaintiff that follows from publicly identifying a particular individual as a

known victim of large-scale cryptocurrency theft. Plaintiff does not seek pseudonymity "simply to protect the parties' professional or economic life." *Guerrilla Girls, Inc. v. Kaz*, 224 F.R.D. 571, 573 (S.D.N.Y. 2004).

Kroll relies on the fact that it and members of the criminal enterprise already know Plaintiff's identity. Opp. 10-11. But Factor 2 also considers "harm from third parties." *Smith*, 105 F. Supp. 2d at 45. Two bankruptcy courts in proceedings involving entities whose systems were compromised as a result of the August 2023 Kroll data breach have concluded that disclosing claimants' identities would expose them to a specific risk of harm from third parties. *See In re FTX Trading Ltd.*, Case No. 22-11068, Hr'g Tr. 157:8-21 (Bankr. D. Del. June 9, 2023) ("if they have a name and they are an FTX customer, they can be targeted, and that is what we need to protect here"); Dkt. 12-1, at 30 (*Genesis* sealing order) ("The evidentiary record demonstrates that an undue risk of identity theft or other unlawful injury exists to the Individual Lenders should their names, addresses, or other contact information be released in these bankruptcy cases."). Factor 2 likewise favors pseudonymity here.

### C.      Identifying Plaintiff would also exacerbate the very injury for which he seeks redress through this lawsuit (*Factor 3*).

Courts in this District and elsewhere have acknowledged the inherent tension in requiring disclosure of a litigant's identity in a case arising from harms specific to such disclosure. *See, e.g.*, *Roe v. Ingraham*, 364 F. Supp. 536, 547 n.7 (S.D.N.Y. 1973) ("[I]f plaintiffs are required to reveal their identity prior to the adjudication of the merits of their privacy claim, they will have already sustained the injury which by this litigation they seek to avoid."); *E.B. v. Landry*, 2020 WL 5775148, at *3 (M.D. La. Sept. 28, 2020) (collecting cases where disclosing name would cause the very injury being litigated against). While Kroll does not address this critical consideration (*compare* Opp. 3, *with Sealed Plaintiff*, 537 F.3d at 190), that is precisely the issue here: disclosing

Plaintiff's name would exacerbate the very privacy harms—i.e., disclosure of his sensitive personal and financial information and his identification as a target of criminals—that gave rise to this data-breach litigation.

While Kroll contends it "has never retaliated—and will never retaliate" against Plaintiff (Opp. 10), Kroll already *exacerbated* the risks to Plaintiff by initially filing portions of its opposition papers on the public docket in error. *See* Dkt. 25. That underscores why pseudonymity—rather than after-the-fact remediation—is necessary to protect Plaintiff and his family. *See Be v. Comcast Corp.*, 2021 WL 694556, at *1 (S.D.N.Y. Feb. 23, 2021) (Cronan, J.) (accepting as true that "public disclosure of [plaintiff's] name could exacerbate Plaintiff's daughter's alleged medical conditions").

Further, unlike Kroll's authorities, Plaintiff has shown the *incremental* injury that would result from disclosure. Namely, confirming both Plaintiff's status as a high-value cryptocurrency holder and the victim of the social engineering attack would paint a target on his back for other malefactors. Pl. Br. 4-5. That is precisely the kind of "direct evidence linking disclosure of [his] name to a specific physical or mental injury" that satisfies Factor 3. *Cf. Doe v. Gong Xi Fa Cai*, 2019 WL 3034793, at *2 (S.D.N.Y. July 10, 2019) (cited at Opp. 13).

Kroll contends the two bankruptcy court decisions shielding claimants' identities (including Plaintiff's) are inapposite because the Bankruptcy Code's sealing framework includes assessing the risk of identity theft. Opp. 13-14. But the risk of identity theft is an equally appropriate consideration under the Second Circuit's test. *See Doe v. Cigna Health & Life Ins. Co.*, 2026 WL 21823, at *4 (S.D.N.Y. Jan. 2, 2026) (Factor 3 supports pseudonymity where plaintiff presented evidence that disclosure would worsen the same risk at issue in the litigation). Plaintiff has provided facts, not speculation, demonstrating the risks he would face. Pl. Br. 4-5.

Kroll further asserts that the bankruptcy courts required ███████████████ to identify themselves if they were "active participants" in the bankruptcy proceedings. Opp. 14-15. But that concerned identification for purposes of the bankruptcy proceeding itself. It does not follow that ███████████████, having sustained the very harm those courts sought to prevent for non-participants, must forfeit pseudonymity in subsequent civil litigation. When the bankruptcy courts addressed the risks attendant to disclosing creditors' personal identifying information, they permitted ███████████████████████████████—to keep their identities sealed. *See supra* p. 6.

## II.    Allowing Plaintiff to proceed under pseudonym will not prejudice Kroll (*Factor 6*).

Allowing Plaintiff to proceed pseudonymously poses no prejudice to Kroll. *First*, as discussed above, Kroll did not oppose pseudonymity in *Does v. Kroll*. Although Kroll asserts reputational harm from being publicly accused of inadequate data security, those plaintiffs leveled materially identical allegations—that Kroll was reckless and grossly negligent in protecting creditors' PII—and Kroll did not object. *See Does v. Kroll*, Dkt. 16 (First Am. Compl.) ¶¶ 25-35, 44-65. Kroll also previews a causation defense that the August 2023 data breach is not connected to the social engineering attack, but it made the same causation argument in *Does v. Kroll*, Dkt. 24 (Mot. to Dismiss) at 15-16, and yet did not oppose pseudonymity there.[3] Kroll does not explain how Plaintiff's allegations would damage its reputation any more than those in the class case alleging the same misconduct.

---

[3] Kroll's argument that the social engineering attack on Plaintiff stemmed from his information being available publicly is directly at odds with the relevant criminal indictments, which state that criminals "obtained and collected *stolen databases primarily relating to virtual currency assets* in order to identify potential victims who held vast amounts of virtual currency." Compl. ¶ 85 (quoting *United States v. Malone Lam*, No. 1:24-cr-00417-CKK (D.D.C.), Dkt. 245, Second Superseding Indictment, at 9).

*Second*, Plaintiff's lawsuit did not first disclose Kroll's involvement in the data breach. Kroll *itself* publicly disclosed the breach. Compl. ¶ 98. Substantial press attention ensued, including from a leading cybersecurity publication that commented: "Kroll's website says it employs 'elite cyber risk leaders uniquely positioned to deliver end-to-end cyber security services worldwide.' Apparently, these elite cyber risk leaders did not consider the increased attack surface presented by their employees using T-Mobile for wireless service." *Id.* ¶ 16 (quoting *Kroll Employee SIM Swapped for Crypto Investor Data*, KREBS ON SECURITY (Aug. 25, 2023), https://krebsonsecurity.com/2023/08/kroll-employee-sim-swapped-for-crypto-investor-data/). Kroll also agreed to a $3.3 million settlement plus future monthly payments to FTX Group as a result of the data breach. *In re FTX Trading Ltd.*, No. 22-11068 (Bankr. D. Del. Aug. 29, 2024), Dkt. 24016-2, Ex. 1 (Settlement Agmt.). Any risk of reputational damage is therefore "significantly mitigated by negative publicity already sustained." *DNA Diagnostics*, 2025 WL 1725449, at *6; *see also EW v. N.Y. Blood Ctr.*, 213 F.R.D. 108, 112 (E.D.N.Y. 2003). While Kroll emphasizes "there is a vast gulf between acknowledging that a security incident occurred and proving that the defendant acted with gross negligence" (Opp. 12), the point is that the data breach has already damaged its reputation, and any incremental impact from this litigation is correspondingly limited.

*Third*, the case Kroll principally relies on—*DNA Diagnostics*—held Factor 6 "lean[ed] in favor of Plaintiff," because "[g]enerally, a defendant is not greatly prejudiced in his ability to conduct discovery if the defendant knows Plaintiff's name." 2025 WL 1725449, at *6; *see also Doe v. Townes*, 2020 WL 2395159, at *6 (S.D.N.Y. May 12, 2020) (cited at Opp. 11) ("Defendant, because he knows Plaintiff's name, is not greatly prejudiced in his ability to conduct discovery."). This also distinguishes *Doe v. Combs*, 2025 WL 1079038, at *3 (S.D.N.Y. Apr. 9, 2025), where

the plaintiff was anonymous *to the defendant*. Further, the cases Kroll cites involved allegations of sexual assault, which carried the potential for moral opprobrium and could permanently impugn the accused parties' reputations. *See, e.g.*, *Townes*, 2020 WL 2395159, at *5; *Telemundo*, 2023 WL 6259390, at *7 (noting "the public interest in sexual assault . . . is very high," particularly where the accuser is "a public figure"). Plaintiff's allegations against Kroll—though very serious—are not of the same nature.

Kroll's remaining prejudice argument—that it is "fundamentally unfair" to defend against pseudonymous allegations, Opp. 7—is undermined by the fact that Plaintiff has agreed to disclose his identity to Kroll and is willing to enter into a protective order that would permit appropriate disclosure of his identity to third parties so as not to hinder Kroll's third-party discovery efforts. *See Doe v. Gooding*, 2022 WL 1104750, at *7 (S.D.N.Y. Apr. 13, 2022) (ordering parties to submit protective order that "permits the limited disclosure of Plaintiff's identity for discovery purposes"). Kroll therefore faces no "asymmetry in fact gathering," *Combs*, 2025 WL 1079038, at *3, and no impediment to mounting its defense.

### III.    The public does not have an atypical interest in knowing Plaintiff's identity (*Factors 8 & 9*).

"The facts of this case do not indicate that the public has any atypical interest in knowing Plaintiff's identity." *DNA Diagnostics*, 2025 WL 1725449, at *7. As the court held in *Does v. Kroll*, "there is nothing about Plaintiffs' identities which are critical to the public's understanding of this case." Dkt. 12-2, at 4. The same is true here.

Kroll suggests (Opp. 11-12) that the public has an interest in knowing Plaintiff's name because this is a dispute between private parties, but every private suit involves "private parties," and that fact alone does not defeat pseudonymity. *See, e.g.*, *DNA Diagnostics*, 2025 WL 1725449, at *5-6. Further, the public can assess legal questions presented here—whether Kroll was

- 10 -

negligent, causation, and whether the breach caused Plaintiff's losses—as well as the pertinent facts, without disclosing Plaintiff's identity.

## IV.    There are no alternative mechanisms to protect Plaintiff's confidentiality (*Factor 10*).

Plaintiff's opening brief, citing the Genesis bankruptcy court's factual findings and order granting anonymity to claimants, explained why disclosing a person's name alone is sufficient to cause harm. Pl. Br. 8. Kroll does not engage with that finding. It instead proposes two alternatives: "targeted redactions at the appropriate time" and a "confidentiality agreement" between the parties. Opp. 16. Neither is adequate. Targeted redactions would require sealing Plaintiff's name in every filing—the same relief sought here but with greater administrative burden on the Court and an increased risk of inadvertent disclosure (as demonstrated by the inadvertent filing of unredacted portions of Kroll's opposition papers (Dkt. 25)). And a private confidentiality agreement between the parties would not prevent disclosure on the public docket. The appropriate time to protect Plaintiff is now, through this "narrowly-tailored solution for protecting Plaintiff's confidentiality while maximizing the amount of information about this case that the public may receive." *Doe v. Gooding*, 2021 WL 5991819, at *3 (S.D.N.Y. July 29, 2021).[4]

### CONCLUSION

For the foregoing reasons and those detailed in Plaintiff's opening brief, Plaintiff respectfully requests that the Court allow him to proceed under pseudonym.

---

[4] Plaintiff acknowledges that Factors 1, 4, and 5 do not weigh in his favor. But the other seven factors support pseudonymity. *See, e.g.*, *DNA Diagnostics*, 2025 WL 1725449, at *5-6 (granting pseudonymity despite fourth and fifth factors weighing against plaintiff); *Cigna Health*, 2026 WL 21823, at *4 (same); *Be*, 2021 WL 694556, at *2 (granting pseudonymity where three factors weighed against plaintiff because "none of these factors, individually or collectively, outweigh[ed] the factors that cut in favor of Plaintiff").

Dated: April 29, 2026                     Respectfully submitted,

                                          */s/ Jason L. Lichtman*

                                          Jason L. Lichtman
                                          Michael J. Miarmi
                                          Sean A. Petterson
                                          **LIEFF CABRASER HEIMANN**
                                           **& BERNSTEIN, LLP**
                                          250 Hudson Street, 8th Floor
                                          New York, NY 10013
                                          Telephone: (212) 355-9500
                                          Email: jlichtman@lchb.com
                                                  mmiarmi@lchb.com
                                                  spetterson@lchb.com

                                          Annie M. Wanless (*pro hac vice*)
                                          **LIEFF CABRASER HEIMANN**
                                           **& BERNSTEIN, LLP**
                                          275 Battery Street, 29th Floor
                                          San Francisco, CA 94111
                                          Telephone: (415) 956-1000
                                          Email: awanless@lchb.com

                                          *Counsel for Plaintiff*

- 12 -

## CERTIFICATE OF COMPLIANCE

I hereby certify that this memorandum of law contains 3,498 words, and thereby complies

with the length limitation of Local Rule 7.1(c).

/s/  *Jason L. Lichtman*
Jason L. Lichtman

## CERTIFICATE OF SERVICE

I certify that the foregoing document was filed via CM/ECF.

/s/  *Jason L. Lichtman*
Jason L. Lichtman

- 13 -